UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Michael A. Dowd Jr., | : |
| Plaintiff, | : Civil Action No. |
| v. | : |
| Trans Union, LLC, | : |
| Defendant. | : |

**COMPLAINT AND JURY DEMAND**

This is an action for damages brought by an individual consumer against Defendant (named below) for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (the "FCRA").

**Introduction**

1. Credit reports (*i.e.*, consumer reports) provide information bearing on, among other things, a consumer's credit worthiness, character, general reputation, personal characteristics and mode of living.

2. Credit reports are meant to enable creditors and other providers of consumer services to make informed risk decisions about new applicants and existing customers. These reports are used to make decisions having to do with insurance, housing, employment, credit and more.

3. In order to obtain data to create credit reports, consumer reporting agencies ("CRAs") utilize data technology which allows the near instantaneous flow of information to consumer reporting agencies. This timely information is intended to lead to faster and better decision-making by its recipients.

4. What would appear to be a benefit of technology, however, has had the opposite effect on consumers, and has led to mishandling and misuse of information.

5. Early on Congress understood the dire consequences of inaccurate credit reporting

and enacted the FCRA to "ensure that consumer reporting agencies exercise their grave responsibilities with fairness". See 15 U.S.C. § 1681(a).

6. In order to effectuate its goal of accurate credit reporting, among other things, Congress mandated that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy" of the information it reports. See 15 U.S.C. § 1681e(b).

7. Despite the law, CRAs, like Defendant, continue to inaccurately report credit information resulting in significant harm to consumers, which can include denial of insurance, housing, employment, and credit.

8. Trans Union, LLC ("Trans Union" or "Defendant") places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to providing them to Defendant's customers.

9. Trans Union reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate information.

10. Thus, to further its own economic ends, the Defendant does not employ reasonable procedures to assure the maximum possible accuracy of information it reports regarding consumers and fails to ensure that the information it reports relates to the appropriate consumer to which it should be associated.

11. As the Brookings Institution explained, "[w]ith money on the line, you might assume that the credit reporting system would fix the problem. In reality it is the opposite. Speed and volume are favored over accuracy. Large-scale inaccuracies are tolerated. The costs of correcting the data outweigh benefits — for the credit bureaus, though, not the consumers…Given the importance of credit scores, why are they so inaccurate? Three reasons: size, speed, and economic incentives of the system."

12. This situation is no exception. As discussed further below, Plaintiff Michael A. Dowd Jr.'s ("Mr. Dowd" or "Plaintiff") Trans Union credit reports were mixed with information of one or more other individuals for years. This information was provided by Trans Union to existing and potential creditors resulting in, among other things, increased rates of credit and credit denials. Most recently, Plaintiff's mixed credit report was provided to Rocket Mortgage and US Bank while Plaintiff was attempting to refinance the mortgage for his home. Because of the inaccurate and derogatory information included in his credit reports, Mr. Dowd was unable to refinance his mortgage until he paid a debt to Philadelphia Police & Fire Credit Union, which he did not owe.

13. The policies and procedures of Trans Union could not have been reasonable because, among other reasons, a cursory review of the personal identifying of the individual(s) who were listed within his credit reports did not match that of Plaintiff.

14. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking opportunities by prejudicing prospective landlords with inaccurate information.

15. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of financing opportunities; loss of time and money; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

16. Accordingly, as discussed further below, Plaintiff alleges violations of Section 1681e(b) and 1681(i)a of the FCRA against Defendant for inaccurately reporting accounts and inquiries belonging to another individual on Plaintiff's credit reports.

## Jurisdiction and Venue

17. Jurisdiction of this Court arises under 15 U.S.C. § 1681p, and 28 U.S.C. §1331, 1337.

18. Venue lies properly in this district pursuant to 28 U.S.C. §1391(b).

## Parties

19. Mr. Dowd is an adult individual who resides in Burlington, VT.

20. Defendant Trans Union is a business entity that is registered to do business in the Commonwealth of Pennsylvania and regularly conducts business in the Eastern District of Pennsylvania, with principal place of business located at 1510 Chester Pike, Crum Lynne, PA 19022. Trans Union is known as a CRA under the FCRA.

## Facts

### Purpose of the FCRA

21. Understanding the dire consequences of inaccurate credit reporting, Congress enacted the FCRA. One of the primary purposes of the FCRA is to require CRAs to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

22. The preservation of one's good name and reputation is also a foundational principle of the FCRA:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly

> as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

Bryant v. TRW, Inc., 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)].

23. Thus, in order to further its objectives, embedded within the FCRA is the requirement that CRAs conduct a reasonable investigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted.

24. Defendant failed to institute or adhere to policies and procedures that could have prevented the reporting of the mixed in information.

### Credit Reporting Industry Operations

25. Trans Union regularly receives information from various sources around the country including banks, credit unions, automobile dealers, student loan providers, public information vendors, and others.

26. The sources are known as "furnishers" within the credit reporting industry and under the FCRA.

27. Trans Union collects information from thousands of furnishers.

28. The process by which Trans Union receives, sorts, and stores information is largely electronic.

29. Trans Union has consumer files on more than 200 million consumers.

**Mixed File Problems of the Consumer Reporting Industry**

30. Defendant is well aware that different consumers can have similar names.

31. Defendant also knows that different consumers can have similar Social Security numbers, birthdays and other personal identifying information.

32. Defendant matches tradelines and public records to a consumer file by comparing the information about the consumer associated with the tradeline or public record to the information they maintain about the consumer in the consumer file.

33. Sometimes Defendant's matching algorithms associate information belonging to one consumer to the consumer file of another consumer; resulting in what is commonly known in the industry as a mixed or merged file.

34. A mixed or merged credit file is the result of Defendant inaccurately mixing personal identifying information, public record information, credit information and/or an entire credit file belonging to one consumer into the credit file of another consumer. See F.T.C. v. TRW, Inc., 784 F. Supp. 361, 362 (N.D. Tex. 1991) (The Federal Trade Commission defined a mixed credit file as a file that "refers to a Consumer Report in which some or all of the information pertains to Persons other than the Person who is the subject of that Consumer Report.")

35. Mixed files are not a new phenomenon.

36. Trans Union has a long-standing and specific knowledge of the mixed file problem.

37. There are many different possible causes for a mixed credit file but all of them relate in one way or another to the algorithms (the database rules) used by the Defendant to match personal identifying information and tradeline information, as well as public record information, to a particular consumer's file.

38. The success or failure of these algorithms and rules is both a function of the rules

themselves and of the information provided by the furnishers of the information to the Defendant.

39. These rules also determine which credit files are selected by the algorithm and are merged to create a complete consumer report.

40. Therefore, a mixed consumer report is sometimes the result of the mixing of two or more consumers' information belonging to different consumers into one consumer report.

**The Consumer Reporting Industries Long History of Mixed Credit Files**

41. Trans Union has been on notice for decades of the existence of mixed files and the fact that procedures for creating consumer files, including matching algorithms, are prone to frequently caused errors. See Thompson v San Antonia Retail Merchants Ass'n, 682 F.2d 509, 511 (5th Cir. 1982).

42. Trans Union has been the subject of numerous state attorney general actions relating to its mixed file problems.

43. For example, in 2015, the New York Attorney General filed charges and settled claims with Equifax, Experian, and Trans Union over mixed files. See In the Matter of Eric T. Schneiderman, Attorney General of the State of New York v. Experian Information Solutions, Inc.; Equifax Information Services, LLC; and Trans Union LLC."

44. Despite Trans Union's notice and being subject to repeated enforcement actions, mixed files persist despite consumers' unique personal identifying information, such as Social Security numbers, addresses, and dates of birth.

45. "Mixed files" create a false description and representation of a consumer's consumer history.

46. Moreover, mixed files result in the disclosure of a consumer's most personal identifying and financial information absent the consumer's knowledge, consent, or both.

47. Trans Union has been sued thousands of times wherein an allegation was made that it violated the FCRA. Moreover, the Defendant is sued, approximately a hundred times each year wherein an allegation is made that it mixed a consumer's credit file with that of another person.

48. Private FCRA lawsuits have resulted in significant settlements and verdicts for consumers who fall victim to a mixed credit file.

49. For example, in 2002, the jury in <u>Judy Thomas v. Trans Union LLC</u>, District of Oregon, Case No. 00-1150-JE, found Trans Union had willfully violated the FCRA by mixing Judy Thomas's personal and credit information with another consumer's and failing to unmix it despite Ms. Thomas' numerous disputes. The jury awarded Ms. Thomas $300,000 in actual damages and $5 million in punitive damages. Despite the verdict, Defendant continues to mix consumers' credit files with other consumers' credit files.

50. More recently, a jury assessed a $60 million verdict against Trans Union for mixing innocent persons as terrorists and drug dealers by matching consumers with the Office of Foreign Asset Control's "terrorist alert" list based on first and last name alone. See <u>Ramirez v Trans Union, LLC</u>, No. 12-CV-00632-JSC, 2017 WL 5153280, at *1 (N.D. Cal. Nov. 7, 2017) *aff'd in part, vacated in part, rev'd in part sub nom*. <u>Ramirez v TransUnion LLC</u>, 951 F.3d 1008 (9th Cir. 2020).

51. "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." <u>Dalton v. CAI</u>, 257 F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA). Moreover, repeated noncompliance with statutory duties can establish that the defendants acted willfully. See <u>Safeco Ins. Co. of Am. v. Burr</u>, 551 U.S. 47, 53 (2007) (punitive damages can be awarded based on

"reckless disregard for a statutory duty").

52. No less than three federal Courts of Appeal have held that a CRA violates 15 U.S.C. § 1681e(b) and may be found to have willfully violated the FCRA when it mixes a consumer's file with another individual.

53. Finally, the FTC has specifically warned CRAs to review their procedures when a mixed file case occurs.

54. Despite federal and state law, Congressional mandate, federal and state enforcement actions, and thousands of consumer lawsuits, mixed consumer files remain a significant problem for Defendant, as well as innocent consumers, including Plaintiff.

## Case Background

55. For years, Mr. Dowd had noticed varying pieces of information appearing on his Trans Union credit report that did not belong to him. That information ranged from inaccurate personal identifying information to various accounts, most of which included derogatory credit information. Mr. Dowd's Trans Union credit reports also included numerous inquiries from potential creditors that Mr. Dowd never requested any credit.

56. The inaccurate personal identifying information included various names that did not belong to him but were similar to his, addresses he never lived at, phone numbers that were never his, and employment information for companies he never worked for.

57. For instance, Mr. Dowd's Trans Union credit report from July 30, 2025, included numerous accounts, many with negative credit information, that did not belong to him:

- Best Buy/CBNA (included derogatory credit information);
- Capital One (included derogatory credit information);
- Comenity Captial Bank/AAA Rewards (included derogatory credit

9

- information);

- Freedom Credit Union (included derogatory credit information);

- Jefferson Capital System (debt collection account);

- Philadelphia Police & Fire FCU (both accounts included derogatory credit information);

- Atlas;

- BridgeCrest Formally Drivetime;

- Capital One Auto Finance;

- Credit Karma CB/CRB;

- SYNCB/ Amazon PLCC (included derogatory credit information);

- SYNCB/ PPC (included derogatory credit information);

- Huntington NTL BK;

- Raymour and Flanigan; and

- Three accounts with Freedom Credit Union.

58. Throughout the years, Mr. Dowd had disputed the inaccurate reporting with Trans Union, but Trans Union continued to claim that the information was verified as accurate.

59. Because of the inaccurate information, Mr. Dowd had been denied credit on numerous occasions.

60. As recently as 2025 Mr. Dowd was denied loan applications to refinance his home with US Bank and Rocket Mortgage. Mr. Dowd was also recently denied an automobile loan.

61. In approximately September 2025, after yet another dispute with Trans Union, Mr. Dowd was finally able to have his credit report corrected.

62. This was the first time in over approximately ten (10) disputes by Mr. Dowd that

he was finally able to have his credit report corrected.

63. Defendant failed to institute or adhere to policies and procedures that could have prevented the reporting of the inaccurate information. The consumer to whom the inaccurate information belonged to certainly has a different social security number, last name, and other relevant identifying information. If such information was not available to Defendant to confirm the accuracy of the inaccurate information, the inaccurate information should not have been reported.

64. Defendant knew or should have known that its actions violated the FCRA. Additionally, the Defendant could have taken the steps necessary to bring its agents' actions within compliance of the statutes but neglected to do so and failed to adequately review those actions to ensure compliance with said laws.

65. Plaintiff's consumer reports and file have been obtained from the Defendant and have been reviewed by prospective and existing credit grantors of financing, and the inaccurate information has been a substantial factor in precluding Plaintiff from receiving credit opportunities, known and unknown.

66. As a result of the Defendant's violations of the law, Mr. Dowd suffered interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, fear, worry, anxiety, and embarrassment attendant to his disputes.

### Count One – Violations of the FCRA
### Plaintiff v. Trans Union

67. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

68. At all times pertinent hereto, Trans Union was a "person" and a "consumer

reporting agency" as those terms are defined by 15 U.S.C. § 1681a(b) and (f).

69. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

70. At all times pertinent hereto, the above-mentioned consumer reports are the same as that term is defined by 15 U.S.C. § 1681a(d).

71. Trans Union has violated numerous provisions of the FCRA for its improper actions, including but not limited to Sections 1681e(b) and 1681i(a) of the FCRA. Trans Union willfully and negligently violated the FCRA and is liable for damages to Plaintiff pursuant to Section 1681n and 1681o of the FCRA.

72. The conduct of Trans Union was a direct and proximate cause, as well as a substantial factor, in bringing about the actual damages and harm to Plaintiff that are outlined more fully above and, as a result, Defendant is liable to Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

## JURY TRIAL DEMAND

73. Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment in Plaintiff's favor and damages against the Defendant, based on the following requested relief:

    a. Actual damages;

    b. Statutory damages;

    c. Punitive damages;

    d. Costs and reasonable attorneys' fees; and

  e. Such other relief as may be necessary, just and proper.


          **THE KIM LAW FIRM, LLC**

BY: */s/ Richard H. Kim*
   Richard Kim, Esquire
   1515 Market St., Suite 1200
   Philadelphia, PA 19102
   Ph. 855-996-6342/Fax 855-235-5855
   rkim@thekimlawfirmllc.com

   *Attorney for Plaintiff Michael A. Dowd Jr.*

Date: December 30, 2025